UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:19-CR-032-TBR-1

**UNITED STATES OF AMERICA,**                                                                                                      **PLAINTIFF**

**v.**

**TAMERA RAYBURN,**                                                                                                              **DEFENDANT**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant Tamera Rayburn's June 14, 2021 letter to the Court, which the Court construes as a Motion for Compassionate Release. [DN 81]; *see also* [DN 82]. The United States has responded in opposition, [DN 83]. No reply has been filed, and this matter is currently ripe for review. For the reasons set forth below, the Court will deny Defendant's Motion for Compassionate Release, [DN 81].

    **I.**     **BACKGROUND**

On May 14, 2019, Defendant was indicted for the following charges: one count of conspiracy to distribute methamphetamine, in excess of 50 grams; six counts of distribution of methamphetamine, in excess of 5 grams; one count of possession of a firearm in furtherance of a drug trafficking crime; and four counts of being a felon in possession of a firearm. [DN 1]. In exchange for her guilty plea on all other charges, the United States agreed to dismiss the single count of possession of a firearm in furtherance of a drug trafficking crime. [DN 32]. Defendant pleaded guilty on December 9, 2019 and was sentenced to a total of 120 months on June 30, 2020. [DN 76]. She is currently housed at Federal Medical Center ("FMC") Carswell.

## II. ANALYSIS

### A. Legal Standard

The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3852(c) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that-
> (1) In any case—
> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C.A. § 3582(c)(1)(A) (emphasis added).

"The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), 18 U.S.C. § 3582(c)(1)(A) requires the Court to engage in a "three-step inquiry" in reviewing compassionate release motions. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion ... to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and

compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

After considering whether extraordinary and compelling reasons warrant a sentence reduction, the district court proceeds to the final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *Elias*, 984 F.3d at 518 (citing *Jones*, 980 F.3d at 1101, 1108). Additionally, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519.

### B. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, 425 F.Supp.3d. 573, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

The United States as provided records from the Bureau of Prisons indicating that Defendant filed a request for compassionate release on January 27, 2021 "due to Covoid-19 (sic)." [DN 83-1]. That request was denied on January 28, 2021. [DN 83-2]. The Court therefore

4

finds—and the United States does not dispute—that Defendant exhausted her administrative remedies.

### C. Extraordinary and Compelling Reasons

The Court next considers whether there are "extraordinary and compelling reasons" that justify a reduction of her sentence. "[D]istrict courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. But "the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Those words still have their ordinary meaning. *Id.* When Congress enacted the statute in 1984, "'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (citing Webster's Third New International Dictionary: Unabridged 807 (1971)). And "'[c]ompelling' meant 'forcing, impelling, driving.'" *Id.* (citing Webster's Third New International Dictionary at 463).

Defendant argues that she should be granted compassionate release due to her health concerns. [DN 81]. She states that she has one lung and idiopathic pulmonary disease "that can only be treated by blood infusion which they do not do" at her prison. *Id.* Defendant does not mention COVID-19 in her motion, but she previously applied for compassionate release to the BOP, citing COVID-19. *See* [DN 83-1]. The Court therefore understands that Defendant requests compassionate release based on her health concerns and the ongoing pandemic.

In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the Sixth Circuit cited with approval a two-factor test for determining "when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release." *Id.* at 520 (citation omitted).

5

Under that test, the fear of contracting COVID-19 qualifies as an extraordinary and compelling reason for release "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, *4 (N.D. Ohio May 22, 2020)) (internal quotation marks omitted).

With respect to the first element, the United States does not dispute that Defendant suffers from a serious medical condition, namely, her lung disease. *See* [DN 83 pp. 6–7]; [DN 85 (medical records)]. The United States also acknowledges that individuals with certain medical conditions, including respiratory conditions, may have an increased risk of severe illness or death if infected with COVID-19. [DN 83, p. 6]. The Court agrees that Defendant has presented with a serious lung condition and may thereby be at a greater risk of having serious complications from the COVID-19 virus. The first *Elias* factor therefore weighs in Defendant's favor.

However, the Court will also consider whether the prison where Defendant is housed has a severe COVID-19 outbreak. *Elias*, 984 F.3d at 520. As of the date of the entry of this Order, December 6, 2021, thirteen staff members and only one inmate are currently infected with COVID-19.[1] Further, the facility is operating at a Level 2, meaning it has "moderate modifications" in place to prevent the spread of the virus.[2] This includes mandatory face coverings in all indoor spaces and when social distancing is not possible outdoors, and mandatory social distancing in all areas of the facility.[3] Lastly, as the United States points out, Defendant is fully vaccinated. [DN 83, p. 7]. Defendant's vaccinated status greatly reduces her risk of contracting COVID-19. *See id.* at 7–9. As such, the second *Elias* factor weighs heavily against Defendant's motion.

---

[1] Covid-19 Cases, https://www.bop.gov/coronavirus/ (last visited Dec. 6, 2021).
[2] Modified Operational Levels, https://www.bop.gov/coronavirus/ (last visited Dec. 6, 2021).
[3] BOP COVID-19 Operational Levels, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Dec. 6, 2021).

Further, to the extent Defendant argues that she is not receiving appropriate medical care, independent of the pandemic, the Court notes that her medical records indicate that she is receiving treatment at the medical correctional institution where she is housed, and her condition has remained stable. *See* [DN 85]; [DN 83, pp. 3–4 (analyzing medical records)]. Defendant has not provided any evidence that she has been denied necessary medical care, or that her serious medical condition prevents her from providing self-care within the prison setting. *See generally* U.S.S.G. § 1B1.13 app. note 1(A)(ii).

In sum, the Court finds that Defendant presents with a serious medical condition, but does not find that that condition, alone or coupled with the ongoing pandemic, creates an extraordinary and compelling reason for release. Defendant's motion must therefore be denied.

### D.  18 U.S.C. § 3553(a) Factors

Even though the Court has found Defendant is not entitled to compassionate release because she has failed to demonstrate extraordinary and compelling circumstances, the Court will nevertheless weigh the sentencing factors in § 3553(a). *See United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];

    (5) any pertinent policy statement . . . by the Sentencing Commission;

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that compassionate release is not appropriate in this case. In the present case, the nature and circumstances of the crime are serious and weigh against compassionate release. Defendant was a large scale supplier of methamphetamine and firearms in the Paducah, Kentucky area. [DN 72, p. 10]. An investigation revealed that Defendant was in control of the sales, and she had multiple individuals working for her to sell the drugs and guns. *Id.* Many of the firearms involved in the underlying crimes were stolen, and at least four were stolen from a federal firearms licensee. *Id.* at 11. The Court cannot ignore the serious nature of these crimes and the danger that such crimes bring to the community, nor can the Court ignore Defendant's leadership role. The Court also notes that Defendant apparently suffered from the same serious health conditions while committing these crimes.

    Further, Defendant was sentenced to 120 months, and she has been incarcerated approximately twenty-five months. The Court finds that releasing Defendant at this time, with such a significant period of incarceration remaining on her sentence, would minimize the seriousness of her crimes, fail to afford adequate deterrence to criminal conduct, and would be unjust in light of the serious nature of her crimes.

Accordingly, the Court finds that the nature and circumstances of the present offenses and the length of Defendant's remaining sentence do not support relief. Therefore, even if the Court found that extraordinary and compelling reasons for release existed, the Court must deny Defendant's motion under 18 U.S.C. § 3553(a).

### III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant Tamera Rayburn's Motion for Compassionate Release, [**DN 81**], is **DENIED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 7, 2021

cc: Counsel of Record
    Defendant, pro se