UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.   No. 5:19-cr-32-BJB

TAMERA RAYBURN

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Tamera Rayburn is serving a 120-month sentence for distributing methamphetamine and possessing a firearm despite a prior felony conviction. Having been denied compassionate release once before, *see* Opinion (DN 87), Rayburn now tries again. She cites five reasons for release, including her disabled nephew's need for care. But Rayburn hasn't shown that these reasons are "extraordinary and compelling," 18 U.S.C. § 3582(c)(1)(A), or that they warrant resentencing under the considerations made relevant by Congress or the Sentencing Commission, § 3553(a); U.S.S.G. § 1B1.13(b). So the Court denies her motion.

### I. Conviction and Sentence

A federal grand jury indicted Rayburn on more than a dozen gun and drug charges in May 2019. Indictment (DN 1). Rayburn eventually pleaded guilty to eleven of them: one count of conspiracy to distribute methamphetamine, six counts of distributing methamphetamine, and four counts of possessing a firearm as a felon. Plea Agreement (DN 32) ¶¶ 1–3; PSR (DN 72) ¶¶ 1–11. Despite a Guidelines range of 210–262 months' imprisonment, the parties recommended a sentence of 120 months' imprisonment—the statutory minimum. *See* 18 U.S.C. § 3553(a); PSR ¶ 11, ¶¶ 130–32; Gov't Sentencing Memorandum (DN 73) at 3. The Court agreed and sentenced Rayburn to 120 months. Statement of Reasons (DN 78); PSR ¶¶ 128–29.

Rayburn first moved for compassionate release in June 2021. She claimed that her facility delivered inadequate treatment for her lung disease. First Motion for Compassionate Release (DN 81) at 1. She also expressed concern about contracting Covid. *See* First Motion; Opinion at 5. The court denied Rayburn's motion because her medical records indicated that she was receiving adequate care, she received the Covid vaccine, and her facility wasn't suffering an outbreak. Opinion at 6–7.

Rayburn again moved for compassionate release in 2023, this time on five grounds: (1) she is her nephew's only available caregiver; (2) she will not receive

1

adequate medical care during her subsequent Arizona state prison sentence; (3) she has been rehabilitated; (4) recent caselaw from other jurisdictions suggests that sentences for drug offenders should not be based on the "purity" of methamphetamine; and (5) her 18-month Arizona detainer allows this Court to reduce her federal sentence. Motion for Compassionate Release (DN 89) at 6–7. Rayburn also requests appointed counsel and "a video conference hearing to present witnesses and explain her family circumstances." Motion at 2. The Government opposes her motion for compassionate release—largely for the reasons discussed below. *See* Gov't Response (DN 91).

## II. Motion for Compassionate Release

Before a federal inmate may request compassionate release, she must first ask her facility's warden to do so on her behalf. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (citing § 3582(c)(1)(A)). Only after pursuing that request up the administrative chain once the warden responds—or else waiting 30 days after the warden receives the request if he doesn't respond—may the inmate seek release on her own behalf. *Id.* Rayburn claims she did so—and the Government doesn't dispute this. Motion at 3; *see generally* Response to Motion (DN 91). Because a failure to exhaust remedies bars relief only if the Government asserts that defense, *Alam*, 960 F.3d at 833–34, the Court proceeds to the merits of her claim.

Courts evaluating compassionate-release motions apply a "three-step inquiry." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citation omitted). Release is appropriate only if (1) "extraordinary and compelling reasons warrant the reduction," (2) "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the release is justified under the relevant § 3553(a) factors that govern federal sentencing decisions. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc). Those factors include the defendant's "history and characteristics," the "nature and circumstances of the offense," and the need to protect the public, deter criminal conduct, promote respect for the law, and avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). The motion fails if any of these three prerequisites is lacking. *Elias*, 984 F.3d at 519.

In its recently amended compassionate-release policy statement, the Sentencing Commission lists six categories of extraordinary and compelling reasons that may support compassionate release. Those categories are (1) medical circumstances, (2) age, (3) family circumstances, (4) abuse suffered in custody involving a "sexual act" or "serious bodily injury," (5) "other reasons" similar to those in the first four categories, and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b). Such circumstances, according to the Sixth Circuit (speaking before the policy statement), are "most unusual" and "far from common." *McCall*, 56 F.4th at 1055 (citation omitted). And in any event, the Court retains full discretion to

determine whether the defendant's reasons are extraordinary and compelling. *See United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A. No Extraordinary and Compelling Reasons Warrant Early Release

#### 1. Family Circumstances

Early release may be warranted if a defendant's immediate family member is "incapacitat[ed]" and the defendant is the only available or suitable caregiver. § 1B1.13(b)(3); *United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023) (defendant bears burden to make this showing). Immediate family members include children, spouses and partners, parents, grandchildren, grandparents, and siblings. § 1B1.13(b)(3)(D). The Guidelines also allow for care of individuals who, though not immediate family members, have a "similar in kind" relationship with the defendant. *Id.*

Rayburn claims that she is "needed at home" to care for her nephew Hoover—a 40-year-old with Down syndrome. Motion at 9. Hoover needs "in-home care for eating and bathing" and requires "numerous trips" to medical appointments. *Id.* Louise Green, Rayburn's 77-year-old grandmother who currently cares for Hoover, has "progressive chronic kidney disease" and "end-stage Chronic Obstructive Pulmonary Disease (COPD)." *Id.* According to Rayburn, Green is "losing her ability" to care for Hoover, and Rayburn seeks release to replace her in this role. *Id.*

Rayburn's family-circumstances arguments fail for two reasons.

First, neither the Guidelines nor Sixth Circuit precedent offers a sound basis for granting compassionate release to care for a nephew. The Guidelines do not list "nephews" as "immediate family member[s]," and Rayburn has not shown that her relationship with Hoover is "similar in kind to that of an immediate family member." § 1B1.13(b)(3)(D). And courts generally only grant compassionate release to care for a child, partner, sibling, parent, or grandparent. *See United States v. Thompson*, No. 3:17-cr-170, 2021 WL 2418573, at *4–5 (W.D. Ky. June 14, 2021) (collecting cases). This Court is not aware of—nor has Rayburn cited—any precedent in which a court has granted compassionate release to care for an individual beyond those mentioned in the Guidelines.

Second, Rayburn hasn't explained why she is Hoover's only available caregiver. *Cf. United States v. Dick*, No. 3:96-cr-145, 2021 WL 5850187, at *4–5 (M.D. Tenn. Dec. 9, 2021). In fact, her motion suggests the opposite—relaying that Hoover has at least five adult cousins who apparently "do not assist Green with Hoover's care." Motion at 9 n.7. But she never says *why* they don't and whether they're unavailable. Nor has Rayburn indicated that she would be a suitable caregiver. As discussed below, she reports that she suffers from a litany of health issues, is "quite sedentary," and takes naps frequently throughout the day. Exhibit 7 (DN 89-7); *see also* PSR at ¶¶ 119–21; Letter (DN 96). This casts doubt on her physical capability to provide care that no one else could.

### 2. Health Concerns & Arizona Sentence

Rayburn says that she has sleep apnea, requires a CPAP machine, and "has one lung," which increases her risk of complications from Covid. Motion at 8. In a supplemental filing, Rayburn added that she has been diagnosed with ovarian cysts, is obese, "suffers from high blood pressure and thyroid problems," and "recently recovered from Hepatitis C." Letter (DN 96) at 1–2. Though the connection is hardly clear, she raises these health issues in connection with the Arizona state-court detainer that requires her to serve an 18-month shoplifting sentence following her release from federal custody. *See* Motion at 7; PSR at ¶ 114. She expresses concern about "Arizona's grossly inadequate health care system." Letter (DN 96) at 1–2. This detainer of course undermines her argument that she could provide support for her nephew—at least right away. And the papers don't make clear why the fact of a subsequent sentence for shoplifting might otherwise affect her health or support early release.

To the extent that Rayburn asks this Court to modify her Arizona detainer or address prison healthcare in Arizona, such claims are outside this Court's jurisdiction. This Court has no authority over state sentencing and extremely limited authority with respect to state prisons. *See Setser v. United States*, 566 U.S. 231, 241 (2012) ("In our American system of dual sovereignty, each sovereign—whether the Federal Government or a State—is responsible for the administration of its own criminal justice system.") (cleaned up). "[T]his Court" simply can't "order [a state] to withdraw the [defendant's] state detainer." *United States v. Ford*, No. 5:15-cr-23, 2023 WL 5334586, *2 (W.D. Ky. Aug. 18, 2023) (citing *United States v. Langham*, 670 F. App'x 991, 992 (10th Cir. 2016); *United States v. Millan-Sanchez*, 680 F. App'x 638, 639 (9th Cir. 2017)). As to her healthcare concerns, nothing in Rayburn's filings suggests that she can't care for herself in prison, isn't receiving proper treatment now, or wouldn't in a future state prison sentence. *See* U.S.S.G. § 1B1.13(b)(1)(B), (C). To the contrary, her filings indicate that she receives regular treatment for all her medical conditions. *See, e.g.*, Letter Exhibit (DN 96-1).

Rayburn's reply (DN 92 at 2–3) cites several cases in which courts have granted compassionate release to defendants with state detainers. But those courts only did so after finding extraordinary medical or family circumstances and determining that early release was consistent with the § 3553(a) factors. None granted early release merely because a defendant has a state detainer. *See, e.g., Tubbs-Smith v. United States*, No. 18-cr-20310, 2020 WL 3618511 (E.D. Mich. July 2, 2020) (granting defendant's release to state detainer because he had a "serious heart condition" and did not pose a threat to the community); *United States v. Hogg*, No. 13-20809, 2021 WL 567603 (E.D. Mich. Feb. 16, 2021) (granting defendant's release to state detainer based on non-violent criminal history and prison Covid outbreak).

4

### 3. Rehabilitation

Rayburn states that her "rehabilitative programming" supports early release. Motion at 10. According to her request for relief, she has completed or is in the process of completing a nonresidential drug abuse program, various BOP Adult Continuing Education courses, and a housekeeping apprenticeship program. *Id.*

While Rayburn's rehabilitative efforts are certainly commendable, they don't warrant early release considered alongside the remainder of the record before the Court. And they couldn't warrant release standing alone: "[r]ehabilitation … is not by itself extraordinary and compelling." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) ("Congress was emphatically clear that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.") (quoting *United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021)). And even alongside other extraordinary and compelling reasons, its weight is limited: many if not most inmates participate in rehabilitative programs while in prison. *See United States v. Mosley*, No. 1:09-cr-65, 2023 WL 8828004, at *4 (S.D. Ohio Dec. 21, 2023). Rayburn's decision to do so is hardly extraordinary.

### 4. "Purity" of Methamphetamine

Rayburn alleges that the Sentencing Guidelines produce sentencing disparities between defendants dealing "pure" versus "mixed" drugs. Motion at 12. She cites a recent decision from another jurisdiction holding that drug purity should not be a "proxy for culpability," given that "most methamphetamine confiscated today is pure." *Id.* (citing *United States v. Robinson*, No. 3:21-cr-14, 2022 WL 17904534, at *3 (S.D. Miss. Dec. 23, 2022) (cleaned up)). Rayburn thus argues that her sentence for dealing pure methamphetamine was too high. Motion at 12.

For several reasons, this argument fails to justify early release. Nothing in the Guidelines or Sixth Circuit precedent requires the Court to infer that Rayburn's sentence may have been unduly harsh based on the calculated drug weight. Rayburn cites nothing to that effect. And in *Robinson*, by contrast, the drug-purity issue arose when calculating the defendant's Guidelines range—not as a basis for early release after his sentencing under that calculation. 2022 WL 17904534, at *1. There, the purity of the defendant's drugs resulted in a much higher base offense level and a years-longer sentence. *Id.* at *2–3. Because the sentencing judge considered the calculated sentence to be excessive given the defendant's culpability and circumstances, he chose to disregard drug purity when determining the base offense level. *Id.* Here, the question arises in a different context, well after the parties and this sentencing judge agreed that Rayburn's sentence—the statutory minimum—corresponded with her culpability. *See* PSR ¶ 11. So the record offers precious little basis for a new judge considering a compassionate-release request to effectively reject as too long a sentencing judge's decision based on drug weight and purity. After all, her sentence also addressed convictions for illegal firearm possession and conspiracy

5

to distribute in addition to the methamphetamine-distribution charge. *Id.* Given all these countervailing considerations, Rayburn's drug-purity argument fails.[*]

### B. Section 3553(a) Factors

Even if Rayburn could establish an extraordinary and compelling justification under § 3582(c), release would be inconsistent with the relevant sentencing factors set forth by Congress. *See* § 3582(c)(1)(A). As noted above, these factors include the "history and characteristics of the defendant," the "nature and circumstances of the offense," and the need to promote respect for the law, reflect the seriousness of the offense, provide just punishment, deter criminal conduct, and avoid unwarranted sentencing disparities. § 3553(a).

These factors cut against a sentencing reduction here. "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). That danger cautions against a sentence reduction under § 3553(a). *Id.*; *United States v. Alford*, No. 5:14-cr-77, 2021 WL 1511643, at *3 (E.D. Ky. Apr. 9, 2021) (denying compassionate release in part because the danger of drug trafficking militated against sentence reduction). Rayburn's 120-month sentence reflects the seriousness of her offenses and protects the public from her future transgressions. *See United States v. Maxwell*, 991 F.3d 685, 693 (6th Cir. 2021). And this was the statutory minimum sentence—well below the low end of the Guidelines range—so reducing that sentence even further might contribute to sentencing disparities. Finally, Rayburn's extensive criminal history involves dozens of federal and state charges. This undermines the notion that her drug and firearm offenses were aberrations. *See* PSR ¶¶ 55–115; *Maxwell*, 991 F.3d at 693 (affirming denial of compassionate release because defendant was a "likely recidivist").

### III. Request for Appointment of Counsel

Rayburn also asks the Court to appoint her counsel. She acknowledges that she has no right to counsel, and for good reason; "there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings." *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021). Instead, she asks the Court to "exercise its discretion" to appoint counsel, Motion at 2, which it may do when "the interests of justice so require," 18 U.S.C. § 3006A(a)(2). The Court considers factors such as "the type of case, the litigant's ability to represent [her]self, the complexity of the relevant legal and factual issues, and the potential merit of the litigant's claims." *United States v. Pirosko*, No. 21-3383, 2021 WL 8155161, at *2 (6th Cir. Sept. 14, 2021) (citing *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993)).

Based on these factors, the Court sees no need for appointed counsel in this case. The legal standards for compassionate release—at least given the nature of

---

[*] Because the Court denies Rayburn's motion, it need not consider whether granting the motion would have been consistent with the applicable Guidelines policy statements. *See McCall*, 56 F.4th at 1054.

Rayburn's arguments—are well within a pro se litigant's capacity and comprehension. Rayburn's filings demonstrate as much. They show that she understands the law involved and convey to the Court the reasons why she believes relief is warranted. *See id.* at *2; *see also* Order Denying Counsel (DN 82). The Court denies her request not for lack of sophisticated legal argumentation, but rather because her arguments fall short of the relevant legal and factual standards.

### IV.  Request for Evidentiary Hearing

Finally, this Court denies Rayburn's request for an evidentiary hearing. While Rayburn requests a "video conference hearing to present witnesses and explain her family circumstances," Motion at 2, Rayburn has had ample opportunity to make her case in the documents she filed with this Court. The Court does not see why a hearing is necessary or what additional information Rayburn could present that she has not discussed in her filings. A hearing would be extraordinary under the circumstances and unjustified given the arguments raised.

### ORDER

The Court denies Rayburn's motion for compassionate release (DN 89).

Benjamin Beaton, District Judge
United States District Court

August 20, 2024